# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2011AP1673-CRNM |
| COMPLETE TITLE: | State of Wisconsin, |
| | Plaintiff-Respondent, |
| | v. |
| | Cassius A. Foster, |
| | Defendant-Appellant-Petitioner. |

REVIEW OF A DECISION BY THE COURT OF APPEALS
(No cite)
(Ct. App. 2012 – Unpublished)

| | |
|---|---|
| OPINION FILED: | December 26, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 9, 2014 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Monroe |
| JUDGE: | Todd L. Ziegler |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | ABRAHAMSON, C.J., BRADLEY, J., dissent. (Opinion filed.) |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs by *John R. Breffeilh*, assistant state public defender, and oral argument by *John R. Breffeilh*.

For the plaintiff-respondent, the cause was argued by *Thomas J. Balistreri*, assistant attorney general, with whom on the brief was *J.B. Van Hollen*, attorney general.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2011AP1673-CRNM
(L.C. No. 2009CF194)

STATE OF WISCONSIN      :      IN SUPREME COURT

**State of Wisconsin,**

     **Plaintiff-Respondent,**

  **v.**

**Cassius A. Foster,**

     **Defendant-Appellant-Petitioner.**

**FILED**

**DEC 26, 2014**

Diane M. Fremgen
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 N. PATRICK CROOKS, J. This is a review of an unpublished opinion and order of the court of appeals[1] accepting post-conviction counsel's no-merit report and affirming the circuit court's conviction of the defendant, Cassius A. Foster (Foster).

¶2 Following a jury trial, Foster was convicted of operating a vehicle while under the influence of an intoxicant,

---

[1] State v. Foster, No. 2011AP1673-CRNM, unpublished order (Wis. Ct. App. Dec. 10, 2012).

sixth offense, in violation of Wis. Stat. § 346.63(1)(a).[2]  The circuit court, Monroe County, the Honorable Todd L. Ziegler, presiding, entered a judgment of conviction on September 23, 2010.  The circuit court withheld sentence and placed Foster on probation for three years, with one year of jail time as a condition of probation.

¶3  Thereafter, Foster filed a post-conviction motion seeking resentencing on the basis that his trial counsel was ineffective for failing to collaterally attack three prior drunk-driving convictions which enhanced his sentence.  The circuit court ultimately denied the motion.  The circuit court reasoned that Foster was not prejudiced by his trial counsel's failure to collaterally attack the three prior convictions because that challenge was unlikely to succeed.

¶4  Foster's post-conviction counsel then filed a no-merit report with the court of appeals.  The court of appeals accepted the no-merit report and affirmed Foster's conviction.

¶5  Foster, proceeding pro se, filed a petition for review with this court.  His petition focused solely on the issue of whether he possessed a meritorious claim for ineffective assistance of counsel.

¶6  While Foster's petition was pending before the court, the United States Supreme Court decided Missouri v. McNeely, 569 U.S. __, 133 S. Ct. 1552 (2013).  McNeely abrogated our decision

---

[2] All references to the Wisconsin Statutes are to the 2009-10 version unless otherwise indicated.

2

in State v. Bohling, 173 Wis. 2d 529, 547-48, 494 N.W.2d 399 (1993), to the extent that we held the natural dissipation of alcohol in a person's bloodstream constitutes a per se exigency so as to justify a warrantless nonconsensual blood draw under certain circumstances. Because it appeared to us that the police relied on Bohling to effectuate the search and seizure of Foster's blood, we granted review.

¶7 Accordingly, this case presents two issues for our determination: (1) whether the warrantless nonconsensual blood draw performed on Foster is constitutional in light of the United States Supreme Court's decision in McNeely, and if not, whether suppression of the evidence derived from Foster's blood is the appropriate remedy for that constitutional violation, or alternatively, whether the good faith exception to the exclusionary rule applies; and (2) whether the court of appeals properly accepted post-conviction counsel's no-merit report.

¶8 We hold that McNeely applies retroactively to the facts of this case and that the warrantless nonconsensual blood draw performed on Foster violated his right to be free from unreasonable searches and seizures. However, we decline to apply the exclusionary rule to suppress the evidence derived from Foster's blood. Because the police acted in objectively reasonable reliance upon the clear and settled precedent of Bohling in effectuating the search and seizure of Foster's blood, the good faith exception to the exclusionary rule precludes suppression of the evidence.

3

¶9 We further hold that the court of appeals properly accepted post-conviction counsel's no-merit report. The court of appeals reasonably exercised its discretion in finding no arguable merit to Foster's ineffective assistance of counsel claim on the basis that Foster failed to demonstrate the requisite prejudice to support that claim.

¶10 Therefore, we affirm the decision of the court of appeals and uphold Foster's conviction.

I

¶11 On March 6, 2009, at approximately 11:55 p.m., Officer Jarrod Furlano of the Tomah Police Department stopped Foster's vehicle for traveling fifty miles per hour in a thirty mile per hour speed zone. When approached by Officer Furlano, Foster struggled to lower his window and to produce his driver's license. Observing that Foster had glassy, bloodshot eyes and slurred speech, Officer Furlano asked Foster whether he had been consuming alcohol. Foster responded that he had consumed a couple beers.

¶12 As a result, Officer Furlano had Foster exit his vehicle for standardized field sobriety testing. He asked Foster to perform the "horizontal gaze nystagmus test," the "walk and turn test," and the "one leg stand test." According to Officer Furlano, Foster failed all three tests.

¶13 Officer Furlano then placed Foster under arrest and transported him to Tomah Memorial Hospital for a blood draw. Foster refused to consent to the draw. Acting without a warrant, Officer Furlano instructed a registered nurse to draw

Foster's blood. The blood draw occurred at approximately 12:50 a.m. The results showed that Foster's blood-alcohol level was .112 at the time of the draw.

¶14 On March 20, 2009, Foster was charged with operating a vehicle while under the influence of an intoxicant (OWI), seventh offense.[3] The State later amended the criminal complaint on May 28, 2009, to charge Foster with his sixth, not seventh, OWI.

¶15 On May 27, 2010, a jury convicted Foster of OWI. The State then introduced certified driving records from Wisconsin, Oklahoma, and Texas to establish that Foster had five prior drunk-driving convictions for purposes of sentencing under Wis. Stat. § 346.65(2)(am)5.[4]

---

[3] Foster was also charged with operating a motor vehicle with a prohibited alcohol concentration in violation of Wis. Stat. § 346.63(1)(b). The circuit court dismissed that charge at sentencing pursuant to Wis. Stat. § 346.63(1)(c).

[4] Wis. Stat. § 346.65(2)(am)5 provides:

Any person violating s. 346.63(1):

(5) Except as provided in pars. (f) and (g), is guilty of a class H felony and shall be fined not less than $600 and imprisoned for not less than 6 months if the number of convictions under ss. 940.09(1) and 940.25 in the person's lifetime, plus the total number of suspensions, revocations and other convictions counted under s. 343.307(1), equals 5 or 6, except that suspensions, revocations or convictions arising out of the same incident or occurrence shall be counted as one.

(continued)

¶16 On September 23, 2010, the circuit court entered a judgment of conviction reflecting Foster's sixth OWI offense. The circuit court withheld sentence and placed Foster on probation for three years, with one year of jail time as a condition of probation.

¶17 Foster then filed a post-conviction motion seeking resentencing on the basis that his trial counsel was ineffective for failing to collaterally attack his three prior drunk-driving convictions from Oklahoma.  Underlying Foster's ineffective assistance claim was his contention that those convictions were obtained in violation of his constitutional right to counsel; thus, the prior convictions should not have enhanced his sentence in this case.

¶18 In support of his motion, Foster submitted an affidavit alleging the following facts for each prior conviction: (1) he entered his guilty plea without the advice of counsel; (2) he did not affirmatively waive his right to counsel; and (3) he was not advised of his right to counsel. Foster further averred that he would have asked for a lawyer in each case because: (1) he did not know how serious the charge was; (2) he did not know how a conviction would affect him in the future; (3) he did not know that an attorney could assist

---

Of Foster's five prior drunk-driving convictions, three were from Oklahoma and two were from Texas.  The Oklahoma convictions took place in 1991, 1993, and 1994.  The Texas convictions occurred in 1997 and 1998.

him in contesting the charges against him; and (4) he did not know the difficulties and disadvantages of representing himself.

¶19 On June 15, 2011, the circuit court held a hearing pursuant to State v. Machner, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979),[5] wherein Foster's trial counsel testified on the matter of deficient performance. Trial counsel testified that she had two reasons for not collaterally attacking Foster's prior convictions. First, she believed that a collateral attack was a sentencing issue, not a trial issue, and that Foster could raise it at sentencing. Second, she withheld a collateral attack as a matter of trial strategy: Foster's objective was to negotiate a plea deal, and the State had a policy of withdrawing a pretrial offer in the face of an evidentiary motion.

¶20 At the Machner hearing, the circuit court also took testimony and received evidence on the matter of prejudice. In order to evaluate whether Foster was prejudiced by his trial counsel's failure to collaterally attack his prior convictions, the circuit court proceeded under the burden-shifting collateral attack procedure that we set forth in State v. Ernst, 2005 WI 107, ¶37, 283 Wis. 2d 300, 699 N.W.2d 92. Pursuant to Ernst, the circuit court determined that Foster's affidavit made a prima facie showing that his waiver of counsel in the Oklahoma cases was not a knowing, intelligent, and voluntary one. The

---

[5] In Machner, the court of appeals held that "it is a prerequisite to a claim of ineffective representation on appeal to preserve the testimony of trial counsel." State v. Machner, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979).

7

circuit court then shifted the burden to the State to prove otherwise by clear and convincing evidence.

¶21 The State sought to meet its burden by questioning Foster as to the averments in his affidavit.[6] The State also introduced two certified copies of the "Notice of Rights" form that Foster signed when he entered his guilty plea to each Oklahoma offense.[7] The forms provided, in relevant part:

> I, (being of legal age) the defendant in this matter, for which if convicted I may be sentenced to jail, was advised in open court, of my right to be represented by counsel of my choice, by the Municipal Public Defender if I so request and qualify as an indigent, or waive my right to counsel.
>
>  . . .
>
> I FURTHER UNDERSTAND . . . THAT a record of any conviction in traffic cases will be sent to the Department of Public Safety of Oklahoma to become part of my permanent driving record.

---

[6] We note that there is no transcript of the proceedings that took place in the Oklahoma cases.

[7] Foster's post-conviction motion alleged that his trial counsel was ineffective for failing to collaterally attack three prior convictions from Oklahoma. However, he later conceded that one of those convictions, an implied consent conviction from 1991, was not subject to collateral attack because it was a civil violation that did not implicate his constitutional right to counsel. See State v. Hahn, 2000 WI 118, ¶28, 238 Wis. 2d 889, 618 N.W.2d 528 (holding that a defendant may not collaterally attack a prior conviction in an enhanced sentence proceeding predicated on the prior conviction except where the challenge is based on a denial of his or her right to counsel). Therefore, we focus on the Oklahoma convictions from 1993 and 1994, as did the circuit court and the court of appeals.

8

¶22 Upon questioning, Foster admitted that he checked the box marked "I waive my right to counsel" on each form. The transcript from the <u>Machner</u> hearing indicates that the following exchange ensued:

> THE STATE: When you just read to the judge that document informs you that you had a right to counsel and that you could have an attorney appointed to you if you were indigent, that is in direct contravention with what you testified earlier, correct?
>
> THE DEFENDANT: Right.
>
> THE STATE: And why did you testify earlier that you have never been advised that an attorney could be appointed for you?
>
> THE DEFENDANT: That was my memory.
>
> THE STATE: So you don't really remember what happened then in 1993 and 1994?
>
> THE DEFENDANT: No.

¶23 Based on the State's evidence, Foster's post-conviction counsel conceded that the State had met its burden of proof that Foster knowingly, intelligently, and voluntarily waived his right to counsel in the Oklahoma cases. Post-conviction counsel then withdrew Foster's motion.

¶24 In any event, the circuit court denied Foster's motion. The circuit court reasoned that Foster was not prejudiced by his trial counsel's failure to collaterally attack the prior convictions because that challenge was unlikely to succeed. The circuit court explained that the State had offered sufficient evidence to prove that Foster knowingly,

intelligently, and voluntarily waived his right to counsel and that such evidence rendered Foster's testimony incredible.

¶25 On October 3, 2011, Foster's post-conviction counsel filed a no-merit report with the court of appeals pursuant to Wis. Stat. § (Rule) 809.32 (2011-12).  Foster filed a response to the no-merit report on October 12, 2011.  He supplemented that response on November 7, 2011.

¶26 As we explain in greater detail below, the court of appeals accepted post-conviction counsel's no-merit report. Foster then filed a petition for review with this court.  In the wake of the United States Supreme Court's decision in McNeely, we granted review.

II

¶27 We are asked to decide whether the warrantless nonconsensual blood draw performed on Foster is constitutional in light of McNeely.  "The application of constitutional principles to a particular case is a question of constitutional fact."  State v. Dearborn, 2010 WI 84, ¶13, 327 Wis. 2d 252, 786 N.W.2d 97.  We accept the circuit court's findings of historical fact unless they are clearly erroneous.  Id.  We review the application of constitutional principles to those historical facts de novo.  Id.

¶28 We are also asked to determine whether the court of appeals properly accepted post-conviction counsel's no-merit report.  We do so under the erroneous exercise of discretion standard.  See State v. Sutton, 2012 WI 23, ¶¶45-48, 339 Wis. 2d 27, 810 N.W.2d 210.  "This court has been reluctant to interfere

10

with the discretion of the court of appeals." Id., ¶45. "A reviewing court will sustain a discretionary decision if it finds that [] the lower court (1) examined the relevant facts, (2) applied a proper standard of law, and (3) used a demonstrative rational process in reaching a conclusion that a reasonable judge could reach." State v. Smythe, 225 Wis. 2d 456, 463, 592 N.W.2d 628 (1999).

¶29 Stated differently, in reviewing a court of appeals' decision to accept a no-merit report, we do not conduct our own independent review of the record as required by the United States Supreme Court in Anders v. California, 386 U.S. 738, 744-45 (1967) (setting forth the specific procedure that must be followed to protect a criminal defendant's right to counsel on appeal where appellate counsel believes that an appeal is frivolous). The Anders procedure applies only on direct appeal. Pennsylvania v. Finley, 481 U.S. 551, 554 (1987); Judicial Council Note, 2001, Wis. Stat. § (Rule) 809.32 (2011-12).

III

¶30 We begin by addressing whether the warrantless nonconsensual blood draw performed on Foster is constitutional in light of McNeely, and if not, whether suppression of the evidence derived from Foster's blood is the appropriate remedy for that constitutional violation, or alternatively, whether the good faith exception to the exclusionary rule applies. We recently addressed a similar issue in State v. Kennedy, 2014 WI 132, __ Wis. 2d __, __ N.W.2d __, and we apply the same analysis employed in Kennedy to this case. Therefore, we begin with a

11

discussion of Wisconsin law on searches and seizures prior to McNeely. We next consider McNeely and its effect on the instant matter, determining that the decision applies retroactively and renders unconstitutional the warrantless nonconsensual draw of Foster's blood. We then discuss the propriety of remedying that constitutional violation. We conclude that the good faith exception to the exclusionary rule precludes suppression of the blood draw evidence because the police acted in objectively reasonable reliance on the clear and settled precedent of Bohling in effectuating the search and seizure of Foster's blood.

A

¶31 "Both the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect against unreasonable searches and seizures." State v. Eason, 2001 WI 98, ¶16, 245 Wis. 2d 206, 629 N.W.2d 625.[8] "We have historically interpreted the Wisconsin

_____

[8] The Fourth Amendment to the United States Constitution provides:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 11 of the Wisconsin Constitution states:

> [t]he right of the people to be secure in their persons, houses, papers, and effects against

(continued)

Constitution's protections in this area identically to the protections under the Fourth Amendment as defined by the United States Supreme Court." Dearborn, 327 Wis. 2d 252, ¶14.

¶32 Consistent with the United States Supreme Court's interpretation of the Fourth Amendment, we have adhered to the basic principle that warrantless searches are per se unreasonable unless they fall within a well-recognized exception to the warrant requirement. State v. Mazur, 90 Wis. 2d 293, 301, 280 N.W.2d 194 (1979) (citing Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). We continue to apply that principle to the kind of search performed in this case, "which involved a compelled physical intrusion beneath [Foster's] skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation." McNeely, 133 S. Ct. at 1558.

¶33 Like the United States Supreme Court, we recognize an exception to the warrant requirement for a search performed incident to a lawful arrest. Leroux v. State, 58 Wis. 2d 671, 688, 207 N.W.2d 589 (1973) (citing Ker v. State of Cal., 374 U.S. 23, 41 (1963)). "A lawful arrest gives rise to heightened concerns that may justify a warrantless search, including the need to discover and preserve evidence." State v. Payano-Roman,

---

unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

13

2006 WI 47, ¶31, 290 Wis. 2d 380, 714 N.W.2d 548. "Pursuant to this rule, law enforcement officers have been permitted to seize samples of an arrestee's hair, breath, and urine solely on the basis of lawful arrest." Bohling, 173 Wis. 2d at 537.

¶34 However, "[b]lood constitutes a limited exception to the foregoing rule." Id. In Schmerber v. California, 384 U.S. 757, 770-71 (1966), the United States Supreme Court held that a warrantless nonconsensual blood draw performed incident to a lawful arrest is constitutional only where three conditions are met: (1) the police have a "clear indication"[9] that evidence of intoxication will be found in the blood; (2) exigent circumstances exist; and (3) the method chosen to draw the blood is a reasonable one that is performed in a reasonable manner.

¶35 Regarding the second prong of Schmerber's test, we note that the exigent circumstances doctrine is an exception to the warrant requirement that exists independent of the search incident to arrest exception. State v. Hughes, 2000 WI 24, ¶17, 233 Wis. 2d 280, 607 N.W.2d 621 (citing Payton v. New York, 445 U.S. 573, 575, 583-88 (1980)). The exigent circumstances doctrine requires an emergency situation which "overcome[s] the individual's right to be free from governmental interference," Id., because, as is relevant here, the delay in obtaining a

---

[9] "Clear indication" is the legal equivalent of "reasonable suspicion." State v. Seibel, 163 Wis. 2d 164, 173, 471 N.W.2d 226 (1991).

14

warrant may result in the loss of evidence.  Hughes, 233 Wis. 2d 280, ¶25.

¶36  The United States Supreme Court's mandate that the exigent circumstances doctrine be satisfied in the context of a blood draw incident to a lawful arrest is a strong indication that the Fourth Amendment permits only "minor intrusions into an individual's body under stringently limited conditions . . . ." Schmerber, 384 U.S. at 772.  The exigency sufficient to justify the minor intrusion into Schmerber's body concerned the destruction of evidence: "the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." Id. at 770.

¶37  In the wake of Schmerber, jurisdictions split "on the question whether the natural dissipation of alcohol in the bloodstream establishes a per se exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations." McNeely, 133 S. Ct. at 1558.  Thus, when we answered that question affirmatively in Bohling, 173 Wis. 2d at 539-40, we were not alone.  See, e.g., Gregg v. State, 374 So. 2d 1301, 1303-04 (Miss. 1979) (reasoning that the metabolism of alcohol in the blood alone constitutes a sufficient exigency to justify a warrantless search); State v. Baker, 502 A.2d 489, 493 (Me. 1985) (holding same); State v. Woolery, 116 Idaho 368, 370, 775 P.2d 1210 (1989), overruled on other grounds by State v. Wulff, 337 P.3d 575 (Idaho 2014), abrogated by McNeely, 133 S. Ct. 1552 (holding same).

15

¶38 As a result of our decision in Bohling, a warrantless nonconsensual blood draw taken at the direction of a police officer was constitutional in the following circumstances:

> (1) the blood draw [was] taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there [was] a clear indication that the blood draw [would] produce evidence of intoxication, (3) the method used to take the blood sample [was] a reasonable one and performed in a reasonable manner, and (4) the arrestee present[ed] no reasonable objection to the blood draw.

Bohling, 173 Wis. 2d at 534 (footnote omitted).[10]  Bohling remained the law in Wisconsin for twenty years.

B

¶39 In McNeely, the United States Supreme Court resolved the split among jurisdictions as to whether drunk-driving cases present a per se exigency sufficient to justify a warrantless nonconsensual search and seizure of a person's blood. The United States Supreme Court rejected a categorical rule in favor of a case-by-case, "totality of the circumstances" assessment of

---

[10] We note that our four factor test in Bohling sets forth the proper procedure for conducting a warrantless nonconsensual blood draw in the context of a search incident to a lawful arrest, consistent with Schmerber v. California, 384 U.S. 757 (1966).  In the absence of a lawful arrest, a "warrantless, nonconsensual blood draw of a suspected drunken driver complies with the Fourth Amendment if: (1) there was probable cause to believe the blood would furnish evidence of a crime; (2) the blood was drawn under exigent circumstances; (3) the blood was drawn in a reasonable manner; and (4) the suspect did not reasonably object to the blood draw." State v. Tullberg, 2014 WI 134, ¶31, ___ Wis. 2d ___, ___ N.W.2d ___ (citing State v. Erickson, 2003 WI App 43, ¶9, 260 Wis. 2d 279, 659 N.W.2d 407; Schmerber, 384 U.S. at 769-71).

16

exigency. McNeely, 133 S. Ct. at 1561. Both the metabolization of alcohol in the bloodstream and the resulting loss of evidence are factors to consider in determining whether a warrant is required. Id. at 1568. However, "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so." Id. at 1561.

¶40 Insofar as McNeely rejects a categorical rule concerning exigency in drunk-driving cases, the United States Supreme Court's decision abrogates our holding in Bohling. Kennedy, ___ Wis. 2d ___, ¶32 ("In light of the Supreme Court's decision in McNeely, we recognize our holding in Bohling, that the rapid dissipation of alcohol alone constitutes an exigent circumstance sufficient for law enforcement officers to order a warrantless investigatory blood draw, is no longer an accurate interpretation of the Fourth Amendment's protection against unreasonable searches and seizures."). McNeely therefore creates a new constitutional rule of law for the state of Wisconsin.

¶41 The retroactivity rule provides that "newly declared constitutional rules must apply 'to all similar cases pending on direct review.'" Dearborn, 327 Wis. 2d 252, ¶31 (quotation omitted). Here, Foster's direct appeal was pending at the time McNeely was decided. Despite that fact, the State contends that Foster is not entitled to the benefit of retroactivity. The State's position is that the retroactivity rule should not apply

17

to Foster since he did not have the foresight to raise a "McNeely claim" prior to McNeely being decided. In other words, according to the State, Foster forfeited his right to rely on McNeely.[11]

¶42 We disagree. We are unaware of an exception to the retroactivity rule for cases in which a criminal defendant fails to predict the newly declared constitutional rule that is subject to retroactive application. See Griffith v. Kentucky, 479 U.S. 314, 324-28 (1987) (discussing the exceptions to the retroactivity rule). The State has not pointed to any such exception. Therefore, we conclude that McNeely applies retroactively to this case.

¶43 The question becomes whether the warrantless nonconsensual draw of Foster's blood is constitutional under McNeely. There is no dispute that the police relied on Bohling to effectuate the search and seizure of Foster's blood. As we understand Foster's challenge to the admissibility of his blood

---

[11] Forfeiture involves a party's failure to timely assert a right. State v. Ndina, 2009 WI 21, ¶29, 315 Wis. 2d 653, 761 N.W.2d 612.

draw results under McNeely, he questions whether exigent circumstances justified the police's action.[12]

¶44 Foster points out that the facts of this case are strikingly similar to those of McNeely.[13] As a result, he asks this court to hold that the blood draw violated his constitutional right to be free from unreasonable searches and seizures, just as the United States Supreme Court did in McNeely.

¶45 We note that the United States Supreme Court did not decide whether the facts of McNeely constituted sufficient exigency to justify a warrantless nonconsensual blood draw under its totality of the circumstances test because the state's position relied entirely upon a per se rule of exigency in

---

[12] Aside from exigency, Foster does not contest that the four requirements we set forth in Bohling for conducting a lawful search and seizure of a person's blood incident to arrest were satisfied. In other words, Foster does not dispute that: (1) his blood was taken to obtain evidence of intoxication incident to a lawful arrest for a drunk-driving related violation or crime; (2) there was a clear indication that his blood draw would produce evidence of intoxication; (3) the method used to perform his blood draw was a reasonable one that was performed in a reasonable manner; and (4) he presented no reasonable objection to the blood draw. As we explained in State v. Kennedy, 2014 WI 132, ¶17, __ Wis. 2d __, __ N.W.2d __, McNeely did not abrogate these requirements.

[13] Just like the defendant in McNeely, Foster was pulled over for speeding; he showed signs of intoxication; he acknowledged drinking; he failed field sobriety tests; he was arrested; and he refused a blood draw. See Missouri v. McNeely, 569 U.S. __, 133 S. Ct. 1552, 1556-57 (2013). Moreover, in this case, as in McNeely, the police ordered a warrantless draw of Foster's blood within one hour of the initial traffic stop. Id.

drunk-driving cases. McNeely, 133 S. Ct. at 1567. Thus, "the arguments and the record [did] not provide the Court with an adequate analytic framework for a detailed discussion of all the relevant factors that can be taken into account in determining the reasonableness of acting without a warrant." Id. at 1568.

¶46 Likewise, in this case, the State does not contend that exigent circumstances aside from the natural dissipation of alcohol in the bloodstream justified the police's search and seizure of Foster's blood. It is the State's burden to prove that exigent circumstances exist. State v. Robinson, 2010 WI 80, ¶24, 327 Wis. 2d 302, 786 N.W.2d 463. Under McNeely, the State has failed to meet its burden in this regard. Therefore, we conclude that the warrantless nonconsensual draw of Foster's blood was unconstitutional.

C

¶47 "When there has been an unlawful search, a common judicial remedy for the constitutional error is exclusion." Dearborn, 327 Wis. 2d 252, ¶15. "The exclusionary rule bars evidence obtained in an illegal search and seizure from a criminal proceeding against the victim of the constitutional violation." State v. Ward, 2000 WI 3, ¶46, 231 Wis. 2d 723, 604 N.W.2d 517. "The exclusionary rule is a judicially created remedy, not a right, and its application is restricted to cases where its remedial objectives will best be served." Dearborn, 327 Wis. 2d 252, ¶35. It is well established that the primary purpose of the exclusionary rule is to deter unlawful police conduct. Illinois v. Krull, 480 U.S. 340, 347 (1987).

20

¶48 An exception to the exclusionary rule exists where "the officers conducting an illegal search 'acted in the objectively reasonable belief that their conduct did not violate the Fourth Amendment.'" Dearborn, 327 Wis. 2d 252, ¶33 (quoting United States v. Leon, 468 U.S. 897, 918 (1984)). We expressly adopted that "good faith exception" to the exclusionary rule in Eason, 245 Wis. 2d 206, ¶¶73-74, a case involving the police's objective, reasonable reliance on a facially valid search warrant. We later applied the good faith exception to a different factual scenario in Dearborn, holding "the good faith exception precludes application of the exclusionary rule where officers conduct a search in objectively reasonable reliance upon clear and settled Wisconsin precedent that is later deemed unconstitutional by the United States Supreme Court." Dearborn, 327 Wis. 2d 252, ¶51.

¶49 In Kennedy, __ Wis. 2d __, ¶37, we relied on Dearborn to hold that the good faith exception to the exclusionary rule precluded suppression of the blood draw evidence which resulted from the assumed unlawful search and seizure of Kennedy's blood. We explained that the police reasonably relied on the clear and settled law of Bohling to effectuate that search and seizure. Accordingly, we saw no reason to depart from Dearborn and our application of the good faith exception. Kennedy, __ Wis. 2d __, ¶37.

¶50 Here, Foster offers several reasons that the exclusionary rule is the appropriate remedy for the unlawful search and seizure of his blood. First, he argues that

21

application of the exclusionary rule will deter future Fourth Amendment violations——not by the police, but by the courts. Foster's argument is atypical in this regard; deterrence arguments usually center on the actions of police. He contends that suppression in this case would deter state courts in the future from interpreting Fourth Amendment rights too narrowly in close cases. Specifically, he argued in his brief to this court that it would strengthen the rule of law "if, in such situations, state courts were encouraged to choose the more expansive reading of the Fourth Amendment's protection."

¶51 Second, Foster contends that suppression is warranted to preserve judicial integrity. He maintains that we failed to follow the controlling precedent of Schmerber when we decided Bohling, and as a result, our decision in Bohling was void ab initio.[14] According to Foster, it would serve the interests of judicial integrity to hold that there is no basis for good faith reliance on a void decision from this court, just as there is no basis for good faith reliance on an unauthorized, defective arrest warrant. See State v. Hess, 2010 WI 82, ¶60, 327 Wis. 2d 524, 785 N.W.2d 568 (holding that the good faith exception to the exclusionary rule cannot save evidence seized based on a warrant the judge had no authority to issue).

¶52 Third, Foster argues for a bright line rule excepting bodily intrusion searches from the application of the good faith

---

[14] Ab initio is defined as "[f]rom the beginning." Black's Law Dictionary 4 (7th ed. 1999).

exception, on the grounds that this will maintain the sanctity of an individual's body.

¶53 The State contends that the good faith exception to the exclusionary rule applies. The State offers clear and established precedent to support the application of the good faith exception, namely, Dearborn. Thus, any departure from that established precedent would require us to create a new rule or exception.

¶54 The State also argues that application of the exclusionary rule would serve no remedial purpose. With respect to deterring police misconduct, the State maintains that suppression would have the opposite effect: it would encourage the police to ignore the law. As far as judicial integrity is concerned, the State contends Bohling could be reasonably relied upon because it represented a legitimate interpretation of Schmerber, which was subject to two interpretations until McNeely resolved the conflict.

¶55 Finally, the State argues that Bohling authorized the police to perform a reasonable search and seizure of Foster's blood. Therefore, there is no basis in existing law for excluding bodily intrusion searches from the application of the good faith exception, as Foster advocates.

¶56 We agree with the State and hold that the good faith exception to the exclusionary rule applies because the police conducted the search and seizure of Foster's blood in objectively reasonable reliance on the clear and settled precedent of Bohling. Foster's first two arguments in favor of

23

suppression rely heavily on the notion that we disregarded controlling precedent when we decided <u>Bohling</u>. However, as we explained in <u>Bohling</u>, <u>Schmerber</u> was susceptible to two reasonable interpretations. <u>Bohling</u>, 173 Wis. 2d at 539. Other courts agreed. <u>See</u> <u>McNeely</u>, 133 S. Ct. at 1558 n.2. Until the United States Supreme Court in <u>McNeely</u> spoke definitively on the issue of a per se exigency in drunk-driving cases, we were not precluded from exercising our own judgment on the constitutional matter. <u>See</u> <u>Ward</u>, 231 Wis. 2d 723, ¶38.

¶57 "Our decisions interpreting the United States Constitution are binding law in Wisconsin until this court or the United States Supreme Court declares a different opinion or rule." <u>Id.</u> As a result, we reject Foster's contention that our decision in <u>Bohling</u> was void ab initio,[15] and we decline to find that considerations of judicial integrity require exclusion of the blood draw evidence.

¶58 Finally, we are unconvinced that we should adopt a rule excluding bodily intrusion searches from the application of the good faith exception to the exclusionary rule. While intrusions into the human body implicate significant privacy concerns, they are permissible under reasonable circumstances. <u>Schmerber</u>, 384 U.S. at 770-72. Consistent with that principle, <u>Bohling</u> authorized the search and seizure of Foster's blood.

---

[15] Foster's reliance on <u>State v. Hess</u>, 2010 WI 82, 327 Wis. 2d 524, 785 N.W.2d 568 is therefore misplaced.

24

Thus, we see no reason to depart from Dearborn and our application of the good faith exception.[16]

IV

¶59 We now turn to Foster's contention that the court of appeals erred in accepting post-conviction counsel's no-merit report, as he possesses a meritorious claim for ineffective assistance of counsel. In finding that there was no arguable merit to Foster's ineffective assistance claim, the court of appeals reasoned that Foster was not prejudiced by his trial counsel's failure to collaterally attack his prior convictions because that challenge was unlikely to succeed.[17] Underlying the court of appeals' decision finding no prejudice was its

---

[16] Other courts have applied the good faith exception to the exclusionary rule to preclude suppression in light of McNeely's retroactive effect. See, e.g., State v. Reese, 2014 WI App 27, ¶22, 353 Wis. 2d 266, 844 N.W.2d 396 (holding that the warrantless nonconsensual blood draw evidence should not be excluded in light of McNeely because the police followed clear and settled law at the time of the search and seizure); United States v. Lechliter, 3 F. Supp. 3d 400, 408-09 (D. Md. 2014) (holding same); State v. Edwards, 2014 S.D. 63, ¶19, 853 N.W.2d 246 (holding same).

[17] Foster's post-conviction motion for resentencing alleged that his trial counsel was ineffective. Nevertheless, his responses to the no-merit report claimed that both trial counsel and post-conviction counsel were ineffective. In its opinion and order, the court of appeals focused solely on the issue of whether trial counsel's allegedly deficient performance prejudiced Foster, determining that it did not. However, we presume that the court of appeals also considered the issue of post-conviction counsel's alleged ineffectiveness and reached the same result. See State v. Allen, 2010 WI 89, ¶¶72, 82, 328 Wis. 2d 1, 786 N.W.2d 124. Since both claims depend on a finding of prejudice, we review them as one.

conclusion that, at the Machner hearing, the State had affirmatively proved there was no basis for Foster's collateral attack.

¶60 We begin our analysis by explaining Wisconsin's no-merit procedure.  We then discuss the procedure that a defendant must follow in order to succeed on a collateral attack in an enhanced sentence proceeding on the ground that he or she was denied the constitutional right to counsel, as it informs our decision on whether the court of appeals reasonably determined that there was no arguable merit to Foster's ineffective assistance claim.  Finally, we address the parties' arguments concerning the propriety of the court of appeals' decision to accept the no-merit report in light of these legal principles.  We conclude that the court of appeals reasonably exercised its discretion in accepting the no-merit report.

A

¶61 In Anders, 386 U.S. at 744-45, the United States Supreme Court established a procedure that must be followed to preserve a criminal defendant's Sixth Amendment[18] right to counsel on appeal where appellate counsel believes that an appeal lacks any arguable merit.  That procedure entails the following:

---

[18] The Sixth Amendment to the United States Constitution provides in part:

> In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.

26

> [I]f counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

Anders, 386 U.S. at 744.

¶62  Wisconsin Stat. § (Rule) 809.32 codifies the procedure of Anders.  The rule imposes a few additional requirements on counsel.  Sutton, 339 Wis. 2d 27, ¶30.  However, the essential requirement is as follows:

> After submission of the no-merit report and the response, if the defendant provides one, the court of appeals follows the requirement of Anders: it "not only examines the no-merit report but also conducts its own scrutiny of the record to find out whether there are any potential appellate issues of arguable merit."

State v. Allen, 2010 WI 89, ¶21, 328 Wis. 2d 1, 786 N.W.2d 124 (quoting State v. Fortier, 2006 WI App 11, ¶21, 289 Wis. 2d 179, 709 N.W.2d 893).  If the court of appeals determines that an appeal is frivolous, it "shall affirm the judgment of conviction or final adjudication and the denial of any postconviction or postdisposition motion and relieve the attorney of further

27

responsibility in the case." Wis. Stat. § (Rule) 809.32(3) (2011-12).

¶63 Importantly, we "cannot assume that the court of appeals disregarded its duties under Anders when deciding a no-merit appeal." Allen, 328 Wis. 2d 1, ¶82. Therefore, we presume that the court of appeals considered all issues of arguable merit when conducting such a review even though it did not spell everything out in its opinion. Id., ¶72.

B

¶64 To succeed on a claim for ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that it prejudiced the defense. State v. Carter, 2010 WI 40, ¶21, 324 Wis. 2d 640, 782 N.W.2d 695 (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). As explained, the court of appeals focused exclusively on the prejudice prong of the Strickland test, determining that Foster was not prejudiced by his trial counsel's failure to collaterally attack his prior convictions because that attack was unlikely to succeed.[19] Accordingly, Foster's challenge to the court of appeals' decision accepting the no-merit report hinges on the likely success of a collateral attack on his prior convictions.

---

[19] To prove prejudice, a defendant must demonstrate that "'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" State v. Carter, 2010 WI 40, ¶37, 324 Wis. 2d 640, 782 N.W.2d 695 (quoting Strickland v. Washington, 466 U.S. 668, 694 (1984)).

28

¶65 In State v. Hahn, 2000 WI 118, ¶28, 238 Wis. 2d 889, 618 N.W.2d 528, we held that a criminal defendant may collaterally attack a prior conviction in an enhanced sentence proceeding on the basis that he or she was denied the constitutional right to counsel. We later set forth a procedure that a defendant must follow in order to succeed on that type of collateral attack. Ernst, 283 Wis. 2d 300, ¶37. We find it helpful to briefly discuss the Ernst procedure.

¶66 For there to be a valid collateral attack, a criminal defendant must "make a prima facie showing that his or her constitutional right to counsel in a prior proceeding was violated." Id., ¶25. General allegations will not suffice; "we require the defendant to point to facts that demonstrate that he or she 'did not know or understand the information which should have been provided' in the previous proceeding and, thus, did not knowingly, intelligently, and voluntarily waive his or her right to counsel." Id. (quoting State v. Hampton, 2004 WI 107, ¶46, 274 Wis. 2d 379, 683 N.W.2d 14). "Any claim of a violation on a collateral attack that does not detail such facts will fail." Ernst, 283 Wis. 2d 300, ¶25.

¶67 If the defendant makes out a prima facie case, "the burden shifts to the State to prove by clear and convincing evidence that the defendant's waiver of counsel was knowingly, intelligently, and voluntarily entered." Id., ¶27. In explaining the State's burden of proof, we cited favorably to our decision in State v. Bangert, 131 Wis. 2d 246, 275, 389 N.W.2d 12 (1986), for the proposition that "the state will be

29

required to show that the defendant in fact possessed the constitutionally required understanding and knowledge <u>which the defendant alleges</u> the inadequate plea colloquy failed to afford him." (emphasis added). If the State fails to meet its burden, the defendant's collateral attack will prevail. <u>Id.</u>

C

¶68 We now turn to the parties' arguments concerning the propriety of the court of appeals' decision to accept the no-merit report in light of the foregoing legal principles.

¶69 Foster asserts that there is arguable merit to his ineffective assistance of counsel claim[20] and thus the court of appeals erred in accepting the no-merit report. Specifically, he contends that he was prejudiced by his trial counsel's failure to collaterally attack his prior convictions because that challenge was likely to succeed. Given the evidence adduced at the <u>Machner</u> hearing, Foster believes that he would have prevailed on a collateral attack because the State could not prove that, at the time he allegedly waived counsel, he was

---

[20] Like the circuit court and the court of appeals, Foster focuses exclusively on the prejudice prong of his claim for ineffective assistance. Since we are not required to perform an independent review of the record under <u>Anders</u>, our discussion is limited to whether the court of appeals reasonably determined that there was no arguable merit to Foster's ineffective assistance claim on the basis that he was not prejudiced by his trial counsel's failure to collaterally attack his prior convictions.

aware of the general range of penalties that he faced.[21] The United States Supreme Court has held that a defendant must possess such knowledge in order to validly waive his or her right to counsel. Iowa v. Tovar, 541 U.S. 77, 81 (2004).

¶70 According to the State, the court of appeals properly accepted the no-merit report on the basis that Foster failed to demonstrate prejudice for purposes of his claim for ineffective assistance. The State argues that Foster is unlikely to succeed on a collateral attack because he has not made a prima facie showing of an invalid waiver of counsel in the prior proceedings, as required by Ernst. Relying on Posnanski v. City of West Allis, 61 Wis. 2d 461, 466, 213 N.W.2d 51 (1973), the State asserts that the incredible nature of Foster's testimony at the Machner hearing "erased" Foster's allegations made in support of his prima facie case. The result, per the State's reasoning, is that it never had the burden to prove that Foster knowingly, intelligently, and voluntarily waived his right to counsel.

---

[21] Foster first raised this argument in his briefs before this court. He sometimes conflates this issue with a separate one, namely, whether he was aware of the seriousness of the charges in the prior proceedings. See State v. Klessig, 211 Wis. 2d 194, 206, 564 N.W.2d 716 (1997) (identifying the "seriousness of charges" and the "general range of penalties" as separate issues). However, a fair reading of Foster's argument reveals that he is challenging the court of appeals' decision solely on the basis that there is no evidence to suggest that he was aware of the general range of penalties that he faced at the time he waived his right to counsel in the prior proceedings.

¶71 Alternatively, the State asks that we treat Foster's inability to recall the events of the prior drunk-driving proceedings at the Machner hearing as a refusal to testify. Under Ernst, Foster's refusal to testify would allow a court to "draw the reasonable inference that the State has satisfied its burden, and that the waiver of counsel was a knowing, intelligent, and voluntary one." Ernst, 283 Wis. 2d 300, ¶35.

¶72 We agree with the State that the court of appeals properly accepted the no-merit report on the basis that Foster failed to demonstrate prejudice for purposes of his ineffective assistance claim. In reaching that result, however, we do not adopt the State's reasoning, which would require us to perform an independent review of the record.[22] Because it is apparent that the court of appeals examined all of the relevant facts and exercised reasonable and lawful discretion in determining that there was no arguable merit to Foster's ineffective assistance claim, we affirm the court of appeals.

¶73 The court of appeals clearly examined the relevant facts necessary to make its determination that there was no arguable merit to Foster's ineffective assistance claim. In

---

[22] The court of appeals did not employ the State's reasoning in reaching its conclusion that Foster had not demonstrated prejudice for purposes of ineffective assistance. In finding no prejudice, the court of appeals reasoned that Foster was unlikely to succeed on a collateral attack of his prior convictions because the State had affirmatively proved, per Ernst, that there was no basis for making such a challenge. As explained, our review is limited to whether that decision constituted an erroneous exercise of discretion.

evaluating whether Foster was prejudiced by his trial counsel's failure to collaterally attack his prior convictions, the court of appeals appropriately reviewed the circuit court's findings of fact with respect to the likely success of that challenge. The court of appeals specifically referenced the circuit court's findings of fact in its decision and order, including those related to the incredible nature of Foster's testimony and the validity of the waiver forms that Foster admitted to signing at the prior proceedings.

¶74 The court of appeals then correctly deferred to the aforementioned factual findings in reaching its decision on the no-merit issue. See Carter, 324 Wis. 2d 640, ¶19 (explaining that an appellate court will uphold a circuit court's findings of fact with respect to ineffective assistance unless they are clearly erroneous). Based on those factual findings, the court of appeals reasonably concluded that Foster had failed to meet his burden of proving prejudice for purposes of his claim for ineffective assistance. Stated differently, the evidence supports the court of appeals' reasonable determination that Foster had not affirmatively established that his trial counsel's allegedly deficient performance adversely affected his sentence.

¶75 Although Foster contends that the court of appeals did not reach a reasonable conclusion in accepting the no-merit report because it failed to recognize a deficiency in the record, namely, the absence of evidence indicating that he was aware of the general range of penalties he faced at the time he

waived his right to counsel in the prior proceedings, we disagree.

¶76  We explained in Ernst that a defendant must allege specific facts to demonstrate that he or she did not know or understand the information that should have been provided in the previous proceeding.  Ernst, 283 Wis. 2d 300, ¶25.  Only then is the State required to show that "'the defendant in fact possessed the constitutionally required understanding and knowledge which the defendant alleges the inadequate plea colloquy failed to afford him.'"  Id., ¶31 (quoting Bangert, 131 Wis. 2d at 275) (emphasis added).

¶77  In this case, Foster raised an assortment of issues in his affidavit in support of his post-conviction motion for resentencing.  However, he did not allege that he was unaware of the general range of penalties that he faced at the time he waived his right to counsel in the prior proceedings.  Accordingly, Foster failed to make a prima facie showing on that issue.  That means the burden never shifted to the State to prove otherwise by clear and convincing evidence.  To hold that the State had the burden to affirmatively prove that Foster possessed such knowledge where Foster did not allege a deficiency in that regard is to ignore the legal principle that we presume a proper waiver of counsel in situations involving collateral attacks.  Ernst, 283 Wis. 2d 300, ¶31 n.9.

¶78 Because the court of appeals carefully examined the relevant facts and exercised reasonable and lawful discretion in determining that there was no arguable merit to Foster's

34

ineffective assistance claim, we affirm its decision to accept post-conviction counsel's no-merit report.

V

¶79 We hold that <u>McNeely</u> applies retroactively to the facts of this case and that the warrantless nonconsensual blood draw performed on Foster violated his right to be free from unreasonable searches and seizures.  However, we decline to apply the exclusionary rule to suppress the evidence derived from Foster's blood.  Because the police acted in objectively reasonable reliance upon the clear and settled precedent of <u>Bohling</u> in effectuating the search and seizure of Foster's blood, the good faith exception to the exclusionary rule precludes suppression of the blood draw evidence.

¶80 We further hold that the court of appeals properly accepted post-conviction counsel's no-merit report.  The court of appeals reasonably exercised its discretion in finding no arguable merit to Foster's ineffective assistance of counsel claim on the basis that Foster failed to demonstrate the requisite prejudice to support that claim.

¶81 Therefore, we affirm the decision of the court of appeals and uphold Foster's conviction.

*By the Court.*—The decision of the court of appeals is affirmed.

¶82 SHIRLEY S. ABRAHAMSON, C.J. *(dissenting).* I conclude that the majority opinion has erred in its analysis of the court of appeals' decision accepting the no-merit report. For this reason, I dissent.

¶83 Before I write on the no-merit issue, which is an issue peculiar to the instant case but takes up a lesser part of the majority opinion, I write on the majority opinion's lengthy discussion of the constitutionality of warrantless, nonconsensual blood draws performed on persons suspected of driving under the influence of an intoxicant in light of Missouri v. McNeely, 133 S. Ct. 1552 (2013).

¶84 The majority opinion is part of a trilogy of cases addressing McNeely. In addition to the instant case, the court addresses McNeely in State v. Kennedy, 2014 WI 132, ___ Wis. 2d ___, ___ N.W.2d ___, and State v. Tullberg, 2014 WI 134, ___ Wis. 2d ___, ___ N.W.2d ___, all released on the same date and referencing each other.

¶85 I examine two problems I see arising from the three opinions. These problems should have been worked out before releasing the opinions, but the new procedure for circulating and mandating opinions does not automatically allow for conferences on opinions. Because of the new procedure, the three opinions were on different orbits, with each draft opinion a moving target of revisions and with no opportunity for considering and conferencing the three opinions together.

¶86 For the text of our new procedure and some comments, see my concurrence in State v. Gonzalez, 2014 WI 124, ¶¶25-40, ___ Wis. 2d ___, ___ N.W.2d ___.

I

¶87 With regard to the constitutionality of warrantless, nonconsensual blood draws performed on drunk-driving suspects, I agree that a warrantless nonconsensual blood draw is unconstitutional in the absence of exigent circumstances or some other exception to the warrant requirement. Thus, I agree with the majority opinion that the blood draw in the instant case was unconstitutional.

¶88 I also reluctantly agree with the majority opinion that the unconstitutional blood test results are nevertheless admissible under the good faith exception to the exclusionary rule. My reluctance is based on the concerns expressed in my dissent in State v. Dearborn, 2010 WI 84, ¶¶52-82, 327 Wis. 2d 252, 786 N.W.2d 97 (Abrahamson, C.J., dissenting). As in Dearborn, I conclude that admitting evidence seized unconstitutionally undermines the integrity of the judicial process.

¶89 I briefly state the factual posture of our three McNeely cases to keep the cases in focus. The instant case and Kennedy have essentially the same fact pattern. Indeed, the majority opinion in the instant case states: "We recently addressed a similar issue in State v. Kennedy, 2014 WI 132, ___ Wis. 2d ___, ___ N.W.2d ___, and we apply the same analysis

2

employed in Kennedy to this case."[1]  Nevertheless, the majority opinion does not leave the issue there; it restates the Kennedy opinion, possibly making changes as it goes.

¶90  In both Kennedy and the instant case, the defendant was arrested for driving under the influence.[2]  In both cases, a warrantless, nonconsensual blood draw was performed.  In the instant case, the blood draw was performed about one hour after the traffic stop took place; in Kennedy, the blood draw was performed just under three hours after the accident took place.[3]  The outcome of both cases rests on the good faith exception.

¶91  In Tullberg, the defendant was not arrested.  The blood draw was performed approximately two and a half hours after the accident took place.

---

[1] Majority op., ¶30.

[2] In State v. Kennedy, 2014 WI 132, ___ Wis. 2d ___, ___ N.W.2d ___, the court assumes but does not decide that Kennedy was under arrest when he was placed in the squad car.  Kennedy, 2014 WI ___, ¶20.  In any event, the court in Kennedy concludes that there was probable cause to arrest the defendant for driving under the influence.  Kennedy, 2014 WI 132, ¶20.  This satisfies the arrest requirement in State v. Bohling, 173 Wis. 2d 529, 533-34 494 N.W.2d 399 (1993), abrogated on other grounds by Missouri v. McNeely, 133 S. Ct. 1552 (2013).

[3] Wisconsin Stat. § 885.235(1g) provides in part: "[E]vidence of the amount of alcohol in the person's blood at the time in question, as shown by chemical analysis of a sample of the person's blood . . . is admissible . . . if the sample was taken within 3 hours after the event to be proved."  After the three-hour mark, expert testimony is required before the results of testing conducted on the blood sample can be admitted as evidence.

¶92 One troublesome area in the three cases is reconciling the four-part test in State v. Erickson, 2003 WI App 43, 260 Wis. 2d 279, 659 N.W.2d 407, and another four-part test in State v. Bohling, 173 Wis. 2d 529, 494 N.W.2d 399 (1993), abrogated on other grounds by Missouri v. McNeely, 133 S. Ct. 1552 (2013).

¶93 The Erickson test for the constitutionality of a warrantless, nonconsensual blood draw performed on a drunk driving suspect is as follows:

> A warrantless, nonconsensual blood draw of a suspected drunken driver complies with the Fourth Amendment if: (1) there was probable cause to believe the blood would furnish evidence of a crime; (2) the blood was drawn under exigent circumstances; (3) the blood was drawn in a reasonable manner; and (4) the suspect did not reasonably object to the blood draw.[4]

¶94 The Bohling test for the constitutionality of a warrantless, nonconsensual blood draw performed on a drunk-driving suspect under exigent circumstances is as follows:

> (1) [T]he blood draw is taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime, (2) there is a clear indication that the blood draw will produce evidence of intoxication, (3) the method used to take the blood sample is a reasonable one and performed in a reasonable manner, and (4) the arrestee presents no reasonable objection to the blood draw.[5]

---

[4] State v. Tullberg, 2014 WI 134, ¶31, ___ Wis. 2d ___, ___ N.W.2d ___ (citing State v. Erickson, 2003 WI App 43, 260 Wis. 2d 279, 659 N.W.2d 407).

[5] State v. Bohling, 173 Wis. 2d 529, 533-34, 494 N.W.2d 399 (1993).

¶95 The two tests are different. Bohling applies when there is a lawful arrest or probable cause to arrest.[6] Erickson makes no reference to arrest.

¶96 Tullberg applies the Erickson test because in both Tullberg and Erickson there was no arrest.[7] In the instant case, the court differentiates between Bohling and Erickson by looking to whether the defendant was arrested.[8] Kennedy also relegates the Erickson test to the no-arrest situation.[9]

¶97 The distinction between arrest and no-arrest situations in the Bohling and Erickson tests is questionable because the Bohling test applies when there is either an arrest or probable cause to arrest. In Tullberg, the court concludes there was probable cause to arrest.[10] Thus, the Bohling test could have been applied in Tullberg. This conclusion is supported by the repeated declaration in Tullberg and Kennedy that the circumstances giving rise to probable cause to search

---

[6] See Bohling, 173 Wis. 2d at 534 n.1 ("Probable cause to arrest substitutes for the predicate act of lawful arrest.").

[7] See Tullberg, 2014 WI 134, ¶31.

[8] Majority op., ¶38 n.10.

[9] See Kennedy, 2014 WI 132, ¶17 (describing Erickson as a non-arrest case).

[10] Tullberg, 2014 WI 134, ¶¶37, 40. Too often, the Tullberg opinion discusses probable cause without specifying whether it is referring to probable cause to search or probable cause to arrest.

5

the body by a blood draw are one and the same as those establishing probable cause to arrest.[11]

¶98 The facts supporting probable cause to search and probable cause to arrest may be the same in the drunk-driving context. However, the Erickson language ("probable cause to believe the blood would furnish evidence of a crime") differs from the Bohling language ("there is a clear indication that the blood draw will produce evidence of intoxication"). In State v. Seibel, 163 Wis. 2d 164, 179, 471 N.W.2d 226 (1991), the court held that the clear indication factor of the Bohling test means "blood may be drawn incident to an arrest if there is a reasonable suspicion that the blood contains evidence" of a crime. The court thus held in Seibel that probable cause to search is not necessarily required to support a warrantless blood draw. The instant case reaffirms this holding in Seibel.[12]

---

[11] See Tullberg, 2014 WI 134, ¶55 ("When there is probable cause for a blood draw, as there is in the case at issue, there also is probable cause to arrest for operating while intoxicated."); Kennedy, 2014 WI 134, ¶17 ("[W]hether there is a 'clear indication that the blood draw will produce evidence of intoxication[ ]' in this case is also satisfied by the same facts that support a finding of probable cause to arrest."); Kennedy, 2014 WI 132, ¶18 ("Rather where law enforcement officers have probable cause to search a suspect's blood for evidence of a drunk-driving related violation or crime, they will necessarily satisfy the first two Bohling factors."). But see Kennedy, 2014 WI 132+, ¶18 n.7 ("While probable cause to search for evidence of a drunk-driving related violation or crime is sufficient to satisfy the first two factors of Bohling, the converse is not necessarily true. The fact of an arrest, or probable cause to arrest, for a drunk-driving related violation or crime alone will not permit an investigatory blood draw.").

[12] Majority op., ¶34 n.9.

¶99 I dissented in Seibel, stating that the "clear indication" language in Schmerber v. California, 384 U.S. 757 (1966), which was the source of the clear indication factor in Bohling,[13] "should be read to require the police to meet at least the probable cause standard before they can order a blood test as a search incident to arrest."[14] In my view, McNeely reaffirms the requirement that warrantless, nonconsensual blood draws performed on drunk-driving suspects be supported by probable cause to search.

¶100 McNeely does not squarely address whether probable cause to search is required to support warrantless, nonconsensual blood draws in the drunk-driving context. However, McNeely does state that "[i]n those drunk-driving investigations where police officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment mandates that they do so."[15]

¶101 To obtain a warrant, probable cause to search the body is of course required.[16] McNeely permits an exception to the

---

[13] See Bohling, 173 Wis. 2d at 537.

[14] State v. Seibel, 163 Wis. 2d 164, 186, 471 N.W.2d 226 (1991) (Abrahamson, J., dissenting).

[15] Missouri v. McNeely, 133 S. Ct. 1552, 1561 (2013). See also majority op., ¶39 (quoting this passage in McNeely).

[16] U.S. Const. amend. IV ("The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause . . . .").

warrant requirement when exigent circumstances mean the act of obtaining a warrant would "significantly undermin[e] the efficacy of the search . . . ." McNeely does not permit an exception to the warrant requirement when there is no probable cause to search the body by taking a blood draw and thus no possibility of obtaining a warrant in the first place.

¶102 In light of McNeely, does the court still believe the Bohling test's "clear indication" factor requires only a "reasonable suspicion" that the blood draw will produce evidence of intoxication? If not, is Erickson the new test?

¶103 I turn now to a second issue in the three opinions: exigent circumstances. The instant opinion concludes that because the State does not contend that exigent circumstances existed aside from the natural dissipation of alcohol in the blood, the State has failed to meet its burden and the warrantless blood draw was unconstitutional.[17] I agree with this analysis.

¶104 Although the relevant facts are the same in Kennedy, namely that the State does not contend that exigent circumstances existed aside from the natural dissipation of alcohol in the blood, Kennedy does not treat the exigent circumstance issue in the same way as the instant opinion. Kennedy does not conclude that the State has failed to meet its burden. Rather, Kennedy keeps the issue alive (see Kennedy, 2014 WI 132, ¶¶6, 34), declaring that the court assumes,

---

[17] Majority op., ¶46.

8

"without deciding, that the warrantless investigatory blood draw performed on Kennedy was not supported by exigent circumstances." Kennedy intimates that exigent circumstances might very well have existed by declaring that "[o]ur holding in this case must not be read to affirmatively conclude that exigent circumstances did not support the warrantless investigatory blood draw . . . ."[18] Kennedy seems to be champing at the bit to determine that exigent circumstances were present, regardless of whether the State carried its burden, but the court restrains itself.

¶105 Finally, Tullberg addresses the exigent circumstances exception to validate the warrantless, nonconsensual search of the defendant's blood. The validity of the warrantless, nonconsensual blood draw in Tullberg turns on probable cause to search the body (by a blood draw) and exigent circumstances.[19]

¶106 As I see Tullberg, the court once again whittles down what constitutes exigent circumstances.[20] The State did not demonstrate specific, articulable facts showing that the warrant process would significantly undermine the efficacy of the State's search of the defendant's body for blood and thus that the warrantless search was imperative under the circumstances.[21]

---

[18] Kennedy, 2014 WI 132, ¶34 n.13.

[19] Tullberg, 2014 WI 134, ¶31.

[20] See State v. Subdiaz-Osorio, 2014 WI 87, 357 Wis. 2d 41, 849 N.W.2d 748 (Abrahamson, C.J., dissenting).

[21] See McNeely, 133 S. Ct. at 1561.

9

¶107 In Tullberg, the officer who ordered the blood draw never tried to get a warrant. The officer did not think one was needed in light of Bohling. The circuit court addressed the procedure for getting a warrant, but did not estimate the time it would take to get one.[22]

¶108 For the reasons set forth, I am concerned that the three opinions have not been carefully integrated.[23]

II

¶109 I turn to the majority opinion's analysis of the court of appeals' decision to accept the no-merit report.

¶110 When a no-merit report is submitted as it was in the instant case, the court of appeals must independently examine the record to determine whether there are arguably meritorious grounds for appeal.[24] If there are not, the court of appeals may

---

[22] Tullberg, 2014 WI 134, ¶48 n.25. This footnote in Tullberg is based on the circuit court's comments, not on testimony of either a State or defense witness. This court has held that a "circuit court may not rely on its own personal observations of events not contained in the record." State v. Anson, 2005 WI 96, ¶33, 282 Wis. 2d 629, 698 N.W.2d 776. For additional discussion of when a presiding judge can take judicial notice and when he or she is testifying as a witness, see State v. Novy, 2013 WI 23, ¶¶114-119, 346 Wis. 2d 289, 827 N.W.2d 610 (Abrahamson, C.J., concurring).

[23] The majority opinion's reliance in the instant case on a court of appeals case (State v. Reese, 2014 WI App 27, ¶22, 353 Wis. 2d 266, 844 N.W.2d 396) is not persuasive. See majority op., ¶58 n.16. The defendant in Reese has filed a petition for review, which is pending. On June 12, 2014, the court issued an order holding the petition for review pending this court's disposition of the instant case, Kennedy, and Tullberg.

[24] See Anders v. California, 386 U.S. 738, 744 (1967).

accept the no-merit report.[25]  If there are, the court of appeals must consider them.  This procedure "assures that indigent defendants have the benefit of what wealthy defendants are able to acquire by purchase——a diligent and thorough review of the record and an identification of any arguable issues revealed by that review."[26]

¶111 In Anders v. California, 386 U.S. 738, 744 (1967), which established this no-merit procedure, the United States Supreme Court held as follows:

> [I]f counsel finds [a defendant's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.  That request must [] be accompanied by a brief referring to anything in the record that might arguably support the appeal. . . . [T]he court——not counsel——then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous.  If it so finds it may grant counsel's request to withdraw and dismiss the appeal . . . . [I]f it finds any of the legal points arguable on their merits . . . it must . . . afford the indigent the assistance of counsel to argue the appeal.

¶112 Wisconsin Stat. § 809.32 outlines the Anders procedure followed by Wisconsin courts.  Wisconsin Stat. § 809.32(3) states in relevant part:

> In the event that the court of appeals determines that further appellate proceedings would be frivolous and without any arguable merit, the court of appeals shall affirm the judgment of conviction or final

---

[25] See Anders, 386 U.S. at 744.

[26] State ex rel. Flores v. State, 183 Wis. 2d 587, 626, 516 N.W.2d 362 (1994) (Abrahamson, C.J., concurring) (citing McCoy v. Court of Appeals, 486 U.S. 429, 439 (1988)).

11

adjudication and the denial of any postconviction or postdisposition motion and relieve the attorney of further responsibility in the case.

¶113 In the present case, the defendant's appellate counsel submitted a no-merit report to the court of appeals. The defendant filed a brief in response, asserting several potential grounds for appeal. The court of appeals accepted the no-merit report, stating: "After our independent review of the record, we conclude there is no arguable merit to any issue that could be raised on appeal."[27]

¶114 The defendant then filed a petition for review of the court of appeals' opinion and order.

¶115 It will be helpful in understanding the following discussion to know that the defendant's waiver of counsel in three prior Oklahoma cases is at issue in the instant case because those convictions were considered at sentencing.

¶116 The defendant argued at various points that the prior convictions should have been collaterally attacked by Wisconsin counsel (and thus not considered at sentencing in the instant case) either because the defendant did not knowingly, intelligently, and voluntarily enter his pleas in those cases or because the defendant did not knowingly, intelligently, and voluntarily waive counsel before entering the pleas. The defendant has claimed ineffective assistance of counsel in the instant case based on the failure of Wisconsin counsel to bring a collateral attack.

---

[27] State v. Foster, No. 2011AP1673-CRMN, unpublished opinion & order at 1 (Wis. Ct. App. Dec. 10, 2012).

¶117 This summary simplifies a somewhat complex set of facts. The defendant has been represented by numerous attorneys in the course of this litigation. He has raised ineffective assistance of counsel claims against several of them at different points. Additional details are unnecessary to this discussion.

¶118 I conclude that the majority opinion commits three errors in affirming the court of appeals' opinion and order accepting the no-merit report.

¶119 First, the majority opinion errs in reviewing the court of appeals' decision to accept the no-merit report under the erroneous exercise of discretion standard.[28] Whether the court of appeals properly accepted the no-merit report (that is, whether there were arguably meritorious grounds for the defendant to appeal) is a question of law for the court of appeals to decide.

¶120 As discussed above, the court of appeals is required to "conduct a full examination of all the proceedings [] to determine if the appeal would indeed be wholly frivolous" before accepting a no-merit report.[29] Whether an appeal would be

---

[28] See majority op., ¶9 (stating that "[t]he court of appeals reasonably exercised its discretion in finding no arguable merit to Foster's ineffective assistance of counsel claim"); ¶28 (stating that the erroneous exercise of discretion standard of review applies).

[29] State ex rel. Seibert v. Macht, 2001 WI 67, ¶14, 244 Wis. 2d 378, 627 N.W.2d 881 (internal quotation marks omitted).

frivolous is a question of law.[30] This court reviews questions of law independently of the circuit court and court of appeals.[31] Thus, whether the court of appeals properly accepted the no-merit report presents a question of law this court decides independently of the circuit court and court of appeals. The majority opinion errs in applying the erroneous exercise of discretion standard to review the court of appeals' conclusion of law that there is no arguable merit to any of the defendant's potential grounds for appeal.

¶121 The majority opinion cites State v. Sutton, 2012 WI 23, ¶¶45-48, 339 Wis. 2d 27, 810 N.W.2d 210, to support its conclusion that the court of appeals reasonably exercised its discretion.[32] But Sutton addressed a much narrower issue and does not dictate the standard of review to be applied in the present case. The discretionary decision in Sutton was whether the court of appeals should accept a no-merit report when the record revealed an arguably meritorious claim that had not been preserved.[33] We stated that the court of appeals has discretion

---

[30] Howell v. Denomie, 2005 WI 81, ¶9, 282 Wis. 2d 130, 698 N.W.2d 621 ("[A]n appellate court decides whether an appeal is frivolous solely as a question of law.").

[31] Seibert, 244 Wis. 2d 378, ¶8.

[32] See majority op., ¶28.

[33] State v. Sutton, 2012 WI 23, ¶¶39-44, 48, 339 Wis. 2d 27, 810 N.W.2d 210 ("The court of appeals did not have to accept the no-merit report that outlined an unpreserved error at the circuit court. It is well-accepted appellate practice that an appellate court has discretion to reach the merits of an unpreserved issue." (Emphasis added.)).

14

in a no-merit proceeding to decide whether to disregard the fact that the defendant failed to preserve an issue and to "reach the merits of [that] unpreserved issue."[34] The instant case does not involve this kind of discretionary decision.

¶122 Even in Sutton, where the discretionary decision rested on a mistake of law, this court remanded the matter to the court of appeals to reject the no-merit report.[35] In the instant case, the court of appeals' decision was based on an error of law. As I discuss next, the court of appeals incorrectly treated the circuit court's determination that the defendant's waivers of counsel in three prior Oklahoma cases were knowing, intelligent, and voluntary as a finding of fact rather than a conclusion of law.[36] Under the standard of review employed by the majority opinion, applying an incorrect legal standard, as the court of appeals did here, is an erroneous exercise of discretion that requires reversal.[37]

¶123 The majority opinion's second error is its failure to acknowledge that the court of appeals treated the circuit court's determination that the defendant's waivers of counsel in three prior Oklahoma cases were knowing, intelligent, and

---

[34] State v. Sutton, 2012 WI 23, ¶39, 339 Wis. 2d 27, 810 N.W.2d 210.

[35] See Sutton, 339 Wis. 2d 27, ¶¶49-50.

[36] State v. Foster, No. 2011AP1673-CRMN, unpublished opinion & order at 5 (Wis. Ct. App. Dec. 10, 2012).

[37] LeMere v. LeMere, 2003 WI 67, ¶14, 262 Wis. 2d 426, 663 N.W.2d 789.

voluntary as a finding of fact rather than a conclusion of law.[38] The court of appeals' opinion and order states:

> [The defendant] argues that the waivers of counsel were not made knowingly and intelligently. As we described above, the circuit court has already determined otherwise. On appeal, we affirm that finding of fact unless it is clearly erroneous. [The defendant's] response does not give us any reason to believe the findings were clearly erroneous.[39]

¶124 Whether the defendant's waivers of counsel were knowing, intelligent, and voluntary is a question of constitutional fact, not a question of fact.[40] When reviewing a question of constitutional fact, an appellate court accepts the circuit court's findings of historical facts unless clearly erroneous, but independently applies constitutional principles to those facts.[41] In other words, the ultimate question of whether the defendant's waivers of counsel were constitutionally

---

[38] State v. Foster, No. 2011AP1673-CRMN, unpublished opinion & order at 5 (Wis. Ct. App. Dec. 10, 2012).

[39] State v. Foster, No. 2011AP1673-CRMN, unpublished opinion & order at 5 (Wis. Ct. App. Dec. 10, 2012) (citations omitted).

[40] State v. Ernst, 2005 WI 107, ¶10, 283 Wis. 2d 300, 699 N.W.2d 92 ("Whether a defendant knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel requires the application of constitutional principles to the facts.").

[41] See, e.g., State v. Hoppe, 2009 WI 41, ¶45, 317 Wis. 2d 161, 765 N.W.2d 794 (applying the two-step constitutional fact analysis to the question of whether a defendant's plea was entered knowingly, intelligently, and voluntarily); Ernst, 283 Wis. 2d 300, ¶10 (noting that "[w]hether a defendant knowingly, intelligently, and voluntarily waived his Sixth Amendment right to counsel requires the application of constitutional principles to the facts").

valid is a question of law the court of appeals should have decided independently of the circuit court.

¶125 The majority opinion ignores this error by the court of appeals without any explanation.  The majority opinion does so despite the fact that an error of law is grounds for reversal even under the erroneous exercise of discretion standard. "Discretionary decisions must be arrived at by application of the proper legal standards; the failure to apply the correct legal standards is an erroneous exercise of discretion."[42]

¶126 The majority opinion's third error is ignoring the court of appeals' failure to review one of the defendant's potential grounds for appeal.

¶127 In his brief to this court, the defendant raises a second claim of ineffective assistance of counsel in Wisconsin. The defendant asserts that when he entered pleas in the three prior Oklahoma cases, he was not aware of "the general range of penalties" he would face.  Thus, the pleas were not knowing, intelligent, and voluntary, and the resulting convictions should have been collaterally attacked in Wisconsin.

¶128 This claim is distinct from the defendant's earlier claim of improper waiver of counsel in the same three prior Oklahoma cases.  Even if the defendant properly waived counsel before entering his pleas in those cases, the pleas may not have been knowing, intelligent, and voluntary if he was unaware of

---

[42] LeMere, 262 Wis. 2d 426, ¶14.

"the potential punishment if convicted."[43]  But see State v. Hahn, 2000 WI 118, 238 Wis. 2d 889, 618 N.W.2d 528, modified on reconsideration, 2001 WI 6, 241 Wis. 2d 85, 621 N.W.2d 902 (governing the bases of an offender's challenge at sentencing to a prior conviction).

¶129 The court of appeals erred in overlooking the defendant's second claim of ineffective assistance of Wisconsin counsel, and the majority opinion errs in ignoring the court of appeals' oversight.

¶130 If the defendant has arguably meritorious grounds for appeal, he must be permitted to bring that appeal and to be represented in the process.  Under Anders, the court of appeals must independently and thoroughly review the record for any arguably meritorious grounds for appeal.[44]

¶131 Because the court of appeals employed an incorrect legal standard in reviewing one of the defendant's potential

---

[43] Wis. Stat. § 971.08(1)(a).  This statute does not govern the defendant's pleas entered in Oklahoma, not Wisconsin. However, Wis. Stat. § 971.08 codifies the federal constitutional requirements for a knowing, intelligent, and voluntary plea, which do apply in Oklahoma.  See State v. Brown, 2006 WI 100, ¶23, 293 Wis. 2d 594, 716 N.W.2d 906 ("The duties established in Wis. Stat. § 971.08 . . . are designed to ensure that a defendant's plea is knowing, intelligent, and voluntary.  The faithful discharge of these duties is the best way we know for courts . . . to avoid constitutional problems.").

[44] See Pennsylvania v. Finley, 481 U.S. 551 (1987) (because a defendant has no constitutional right to counsel in state postconviction proceedings, the Anders procedure does not apply in such proceedings); State v. Mosley, 102 Wis. 2d 636, 662-63, 307 N.W.2d 200 (1981) (the Anders procedure applies only at the first level of appeal).

18

claims and overlooked another potential claim, it did not conduct a proper <u>Anders</u> review and thus did not validly accept the no-merit report.  The case should be remanded to the court of appeals for a proper <u>Anders</u> review.[45]  I agree with the defendant that the defendant's deadlines to file a notice of appeal or motion for postconviction relief should be reinstated.

¶132 For the reasons set forth, I dissent.

¶133 I am authorized to state that Justice ANN WALSH BRADLEY joins this dissent except for the discussion of the <u>Tullberg</u> opinion at ¶¶105-107.

---

[45] <u>See</u> <u>State v. Sutton</u>, 2012 WI 23, ¶46, 339 Wis. 2d 27, 810 N.W.2d 210 (2012) (remanding to the court of appeals because "the court of appeals did not have a proper view of the law").