IN RE the MARRIAGE OF:

Michael G. LeMere, Petitioner-Respondent,

v.

Marcia L. LeMere, Respondent-Appellant-
Petitioner.

Supreme Court

*No. 01–2204. Oral argument April 8, 2003.—Decided
June 27, 2003.*

2003 WI 67

(Also reported in 663 N.W.2d 789.)

427

429

For the respondent-appellant-petitioner there were briefs by *James R. Sickel, Daniel J. Vande Loo,* and *Hinkfuss, Sickel & Petitjean,* Green Bay, and oral argument by *James R. Sickel.*

For the petitioner-respondent there was a brief by *Lise Lotte Gammeltoft* and *Peterson, Berk & Cross, S.C.,* Green Bay, and oral argument by *Lise Lotte Gammeltoft.*

¶ 1. DIANE S. SYKES, J. The issue in this divorce case is whether the circuit court erroneously exercised its discretion in ordering an unequal property division based upon one spouse's greater direct contribution to the creation and expansion of the family business enterprise.

¶ 2. Michael and Marcia LeMere were married for nearly 20 years. During their marriage, Michael established and oversaw the family business, MGL Fitness, Inc. Marcia worked two jobs before having children, and then dedicated herself to full-time child-rearing and care of the family home.

¶ 3. Michael filed for divorce in 2001. At trial, Michael asked the circuit court to divide the assets unequally to reflect his industriousness and extensive efforts in creating and expanding MGL Fitness. The circuit court divided the marital assets equally, except for MGL Fitness, the largest asset, which was divided unequally, 65–35 percent in favor of Michael. The court of appeals affirmed.

¶ 4. Property division in divorce is governed by Wis. Stat. § 767.255(3) (2001–2002),[1] which establishes a presumption of equal division of marital property. The statute also provides that the circuit court may deviate from this presumption of equality, but only upon consideration of certain enumerated factors. Here, the circuit court ordered an unequal division of the largest asset in the marital estate upon consideration of only one statutory factor, neglecting entirely the other statutory factors. In so doing, the circuit court failed to apply the correct legal standard, which constitutes an errone-

[1] All subsequent references to the Wisconsin Statutes are to the 2001–2002 volumes unless otherwise indicated.

ous exercise of discretion, requiring reversal and remand for reconsideration of the division of marital property.

## I. FACTS AND PROCEDURAL HISTORY

¶ 5.  Michael and Marcia LeMere married on June 13, 1981. At that time, neither party had any appreciable assets. Marcia was employed as a childcare worker until 1983. From 1983 until 1990, she held two jobs: working full-time as a dental office receptionist by day, and moonlighting part-time cleaning offices.

¶ 6.  Michael worked for the post office when the couple married, but in 1983 he left his position there to become a firefighter. He was an avid weightlifter and started selling small fitness products out of a local gym in 1982. For the next several years he sold these products for two hours in the morning and three to four hours in the evening. After several years of good sales, he decided to establish MGL Fitness, Inc. He operated the business on his days off from the fire department.

¶ 7.  Michael quit his firefighting position in 1992 to focus full-time on expanding MGL Fitness. During this expansion, MGL Fitness opened retail stores in Green Bay, Appleton, Wausau, and Duluth, Minnesota. Michael made all the business decisions for the company, such as product lines, expansion, and location. Marcia filled in only occasionally, on an "as needed" basis, and sometimes helped with local shows and events. The business was successful and several articles in Green Bay area publications recognized its unique growth.

¶ 8.  Marcia quit her part-time job in 1989 prior to the birth of the couple's first child, and quit her full-time receptionist position following the birth of their

second child in 1990. At that point, she decided not to return to work outside the home, but, rather, to stay at home full-time to raise the children. Michael encouraged that move for several reasons, among them the success of MGL Fitness, the expense of daycare, and the tax consequences of Marcia's additional income.

¶ 9. Michael drew an annual salary of $41,000 from MGL Fitness, but this was dwarfed by the company's profits. In the early years of retail operation, Michael left most of the profits in the business to serve as working capital and to reduce debt. Despite the growing success of MGL Fitness, the family lived frugally in a modest home in order to save for retirement, the children's education, and to pay off their own debt. Michael and Marcia each drove modest and dated vehicles. In the six years prior to the divorce, however, Michael's total earnings from the company averaged over $333,000 per year, and the family gradually began to spend more money.

¶ 10. In May of 2000, Michael filed for divorce in Brown County Circuit Court. On May, 17, 2001, the parties reached an agreement regarding custody of the children, division of certain assets, Marcia's earning capacity, and payment of attorney's fees. On July 2, 2001, the circuit court, the Honorable Mark A. Warpinski, entered judgment dividing the marital assets equally, except for MGL Fitness, which was divided unequally, 65–35 percent in favor of Michael.[2] This resulted in a 54–46 percent overall division of the net marital estate in favor of Michael. The circuit court also ordered Michael to pay child support in the amount of $4,606 per month. Finally, the circuit court awarded

[2] The circuit court set the fair market value of MGL Fitness at $1,782,831.

maintenance to Marcia in the amount of $615 per month for eight years, a period which coincides with the youngest child's anticipated high school graduation.

¶ 11. The circuit court premised the 65–35 percent division of MGL Fitness on Michael's ingenuity and industriousness in creating and expanding the business, concluding that his effort in this regard constituted a substantial economic contribution to the marriage justifying the unequal division:

> MGL Fitness is awarded to [Michael LeMere]. It was through his efforts that this business has prospered. There is nothing in this record to suggest that [Marcia LeMere] contributed to the financial success of the business. [Marcia] did not offer any testimony that she played any part in the organization, running, or expansion of the business.
>
> [Michael] asks that I unequally divide the property division to reflect the industriousness of [Michael] in increasing the value of the business. [Michael] relies on *Parrett v. Parrett,* 146 Wis. 2d 830 (Ct. App. 1988) in this regard. In *Parrett,* the [c]ourt unequally divided the husband's interest in a business that was awarded to him. The Trial Court relied on the economic circumstances of the parties (§ 767.255(3)(d) Wis. Stats.). There as here, that decision was based on the husband's industriousness and extensive efforts in creating a business enterprise. I find that [Michael's] efforts to start, maintain, and expand MGL Fitness from a small box operation to a multi-location, multi-million dollar business is a substantial economic contribution to the marriage justifying an unequal property division.
>
> In making this finding, I am not ignoring the contributions that [Marcia] made to this marriage. I do not find her testimony credible with respect to how much she was required to do in [Michael's] absence. [Marcia] indicated that the children do not like being

> with their father for periods of placement. Yet she conceded that the girls preferred to be by themselves even when they are at home. Neither child is in counseling. Neither child is a problem in school. The parties took their children on family vacations as well. From all of this I conclude that [Michael] spent reasonable periods of time with his children as they were growing up. The tangible evidence suggests that the children have a normal relationship with their father and not an estranged one as portrayed by [Marcia].
>
> . . . .
>
> The ratio for [the] division is problematic. To award 100% of the asset to [Michael] would completely ignore the fact that to some extent [Marcia's] homemaking played a part in [Michael's] success. There is no scientific way to construct this percentage. It occurs to this Court that a significant deviation from the 50–50 division is warranted for the reasons stated above. . . . I find that a split of 65–35 in favor of [Michael] is reasonable.

¶ 12. Marcia appealed on the issue of the unequal property division. She also challenged the child support award as an improper deviation from the percentage guidelines, and the maintenance award as too low. The court of appeals affirmed, concluding that the circuit court did not erroneously exercise its discretion in ordering the 65–35 percent division of MGL Fitness. The court of appeals also rejected Marcia's challenge to the child support award, because her own request of $4,000 per month was itself a deviation from the percentage guidelines, and in any event, she was awarded more than she had requested. Finally, the court of appeals concluded that the circuit court did not erroneously exercise its discretion in awarding mainte-

nance of $615 per month for eight years. We accepted review, and now reverse on the issue of the unequal property division.

## II. STANDARD OF REVIEW

¶ 13.    The division of property, calculation of child support, and determination of maintenance in divorce actions are decisions entrusted to the discretion of the circuit court, and are not disturbed on review unless there has been an erroneous exercise of discretion. *King v. King,* 224 Wis. 2d 235, 248–49, 590 N.W.2d 480 (1999); *Cook v. Cook,* 208 Wis. 2d 166, 171–72, 560 N.W.2d 246 (1997). "[A] discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981). A circuit court's discretionary decision is upheld as long as the court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Long v. Long,* 196 Wis. 2d 691, 695, 539 N.W.2d 462 (Ct. App. 1995).

¶ 14.    Discretionary decisions must be arrived at by application of the proper legal standards; the failure to apply the correct legal standards is an erroneous exercise of discretion. *King,* 224 Wis. 2d at 251; *Cook,* 208 Wis. 2d at 171. "A circuit court erroneously exercises its discretion if it makes an error of law or neglects to base its decision upon facts in the record." *King,* 224 Wis. 2d at 248. We decide "any questions of law which

may arise during our review of an exercise of discretion independently of the circuit court and court of appeals." *Id.*

## III. ANALYSIS

¶ 15. The Divorce Reform Act of 1977 and its subsequent amendments govern Wisconsin divorces. The Act was a predecessor to the Wisconsin Marital Property Act, passed in 1984, and both laws are part of The Family Code. Wis. Stat. § 765.001(1). The broadly-stated general purpose of The Family Code is "to promote the stability and best interests of marriage and the family." Wis. Stat. § 765.001(2). As is more pertinent here, The Family Code's statement of legislative intent provides that "[i]t is the intent of the legislature to recognize the valuable contributions of both spouses during the marriage and at termination of the marriage by dissolution or death." *Id.*

¶ 16. Property division in divorce is governed by Wis. Stat. § 767.255, which establishes a presumption in favor of equal division of marital property. Wis. Stat. § 767.255(3). "[T]he legislatively prescribed 50 percent presumption in awarding property division is a rebuttable one." *Jasper v. Jasper,* 107 Wis. 2d 59, 68, 318 N.W.2d 792 (1982). A circuit court may deviate from the presumption of equal property division, but only after considering a lengthy and detailed list of statutory factors. *Id.*[3]

¶ 17. The statutory list contains 12 enumerated factors, plus a catch-all, and is preceded by an explicit

[3] Wisconsin's rules for distribution of property at divorce are a "hybrid" form of equitable distribution. They begin with a presumption of equal division of all property other than that acquired

requirement that the circuit court consider all of the enumerated factors before altering the presumption of equal property division:

> (3) The court shall presume that all property not described in sub. (2)(a) [gifts and inheritances] is to be divided equally between the parties, but may alter this distribution without regard to marital misconduct *after considering all of the following:*
>
> (a) The length of the marriage.
>
> (b) The property brought to the marriage by each party.
>
> (c) Whether one of the parties has substantial assets not subject to division by the court.
>
> (d) The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.
>
> (e) The age and physical and emotional health of the parties.
>
> (f) The contribution by one party to the education, training or increased earning power of the other.
>
> (g) The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market,

---

by gift or inheritance but then require the court to consider a list of equitable factors, including need, to see whether the presumed distribution should be varied.

Distribution of spousal property at divorce without regard to title or property ownership during marriage follows from the conception of marriage as a partnership and attempts to recognize homemaking and childrearing contributions as well as financial contributions.

Howard S. Erlanger and June S. Weisberger, *From Common Law Property to Community Property: Wisconsin's Marital Property Act Four Years Later,* 1990 Wis. L. Rev. 769, 771 n.10 (internal citations omitted).

custodial responsibilities for children and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

(h) The desirability of awarding the family home or the right to live therein for a reasonable period to the party having physical placement for the greater period of time.

(i) The amount and duration of an order under s. 767.26 granting maintenance payments to either party, any order for periodic family support payments under s. 767.261 and whether the property division is in lieu of such payments.

(j) Other economic circumstances of each party, including pension benefits, vested or unvested, and future interests.

(k) The tax consequences to each party.

(l) Any written agreement made by the parties before or during the marriage concerning any arrangement for property distribution; such agreements shall be binding upon the court except that no such agreement shall be binding where the terms of the agreement are inequitable as to either party. The court shall presume any such agreement to be equitable as to both parties.

(m) Such other factors as the court may in each individual case determine to be relevant.

Wis. Stat. § 767.255(3) (emphasis added).

¶ 18. We have held that "[i]n enacting the current property division statute, the legislature abandoned any dower-type formula in favor of a fifty-fifty presumption, subject to certain exceptions." *Bahr v. Bahr,* 107

Wis. 2d 72, 81, 318 N.W.2d 391 (1982). "Part of the rationale in creating the presumption of equal property division is that the homemaking partner has contributed services which have enabled the financially supporting partner to achieve his or her station in life, and in so doing the homemaking partner has lost ground in the job market." *Jasper,* 107 Wis. 2d at 68.

¶ 19.   The presumption of equality in the division of the marital estate is based upon the status of marriage as a partnership:

> We note that marriage is to be viewed as a partnership, and "in dividing property upon divorce, the contribution of a full-time homemaker may be considered greater than, or at least as great as, that of a working spouse. The fact that one party to the marriage worked outside the home while the other cared for the home and children has little bearing on the outcome of the property division if marriage is to be viewed as a 'partnership,' in which the parties contribute according to their respective abilities to the acquisition and preservation of marital assets."

*Id.* at 67 (quoting *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 49, 260 N.W.2d 658 (1978)). "[S]pouses are presumed to be equal contributors to the accumulated wealth of a marriage, regardless of whether their contributions are principally made inside or outside the home." *Katzman v. State Ethics Board,* 228 Wis. 2d 282, 297, 596 N.W.2d 861 (Ct. App. 1999).

¶ 20.   A previous version of the statute provided that the circuit court may alter the presumptive equal division of property "after considering" the statutory factors. *See* Wis. Stat. § 247.255 (1977–78) ("The court shall presume that all other property except inherited property is to be divided equally between the parties,

but may alter this distribution without regard to marital misconduct after considering . . . ") This language has been interpreted as requiring the circuit court to consider the statutory factors that are relevant to the case, but not necessarily all 12. *Lutzke v. Lutzke,* 122 Wis. 2d 24, 38, 361 N.W.2d 640 (1985)("[T]he assets of the marriage shall be allocated or distributed in accordance with the court's exercise of discretion after considering the pertinent and relevant factors."); *Arneson v. Arneson,* 120 Wis. 2d 236, 254, 355 N.W.2d 16 (Ct. App. 1984)(citing *In re the Marriage of Lundberg,* 107 Wis. 2d 1, 11–12, 318 N.W.2d 918 (1982)).

¶ 21. As noted above, however, the current version of the statute provides that the circuit court may alter the presumptive equal division of property "after considering *all of the following,*" and this language is followed immediately by the enumeration of the factors in subsections (a)-(m). Wis. Stat. § 767.255(3) (emphasis added). The "all of the following" language was added in 1993.[4]

[4] In 1971, the state Senate had noted that the "after considering" language only required the trial judge to consider the relevant statutory factors, rather than each factor: "In its analysis of the proposed law, the Legislative Reference Bureau concluded that: 'The estate of either or both parties may be divided by the court after considering all *appropriate factors.*' " *Wilberscheid v. Wilberscheid,* 77 Wis. 2d 40, 46–47 n.7, 252 N.W.2d 76, 80 (1977)(emphasis added) (citing Legislative Reference Bureau, Drafting File, Chapter 220 (1971) and 1971 Senate Bill 241 (March 3, 1971)). The relevant portion of the statute, Wis. Stat. § 247.26, was split into its own section, Wis. Stat. § 247.255. *See,* §§ 41–42, ch. 105, Laws of 1977. It was then renumbered as Wis. Stat. § 767.255. *See* § 50, ch. 32, Laws of 1979. Effective May 6, 1994, the legislature amended Wis. Stat. § 767.255(3) to include the "all of the following" language. *See* 1993 Wis. Act 422.

¶ 22. The statute, therefore, does not permit a circuit court to deviate from the presumption of equal property division after considering one factor alone. That is what occurred here. The circuit court's unequal division of MGL Fitness was based entirely upon its analysis of the parties' respective contributions to the marriage pursuant to Wis. Stat. § 767.255(3)(d). The circuit court completely neglected to address any of the other statutory factors, and therefore applied an incomplete, and thus incorrect, standard of law.

¶ 23. The circuit court relied in part upon *Parrett v. Parrett,* 146 Wis. 2d 830, 432 N.W.2d 664 (Ct. App. 1988), in which the court of appeals affirmed a circuit court's unequal division of business assets because the husband served as " 'the genius and driving force behind the commencement of the business and its development and prosperity.' " *Parrett,* 146 Wis. 2d at 835. In *Parrett,* however, the court's unequal property division was also based on the relatively short duration of the marriage (seven years), the fact that neither party "brought much property to the marriage," the age, health, and earning capacity of the wife, the absence of any contribution by the wife to the education, training, or earning capacity of the husband, and the "generous child support" and maintenance awards in the case. *Id.* at 834–35. The court in *Parrett* did not confine its analysis to the relative contributions of each spouse to the development of the business, but, rather, considered other relevant statutory factors.

¶ 24. We note, too, that *Parrett* was decided under the prior statute. The text of Wis. Stat. § 767.255(3) now explicitly requires that any deviation from the presumptive equal property division be based upon consideration of all the statutory factors.

¶ 25. This is not to say that the circuit court is precluded from giving one statutory factor greater weight than another, or from concluding that some factors may not be applicable at all. Property division in divorce remains a discretionary decision of the circuit court, but the record must at least reflect the court's consideration of all applicable statutory factors before a reviewing court can conclude that the proper legal standard has been applied to overcome the presumptive equal property division under Wis. Stat. § 767.255(3). Circuit courts must subject requests for unequal division of property to the proper statutory rigor. The failure to do so is an erroneous exercise of discretion.

¶ 26. We emphasize, however, that a circuit court's failure to address factually inapplicable statutory factors will not be an erroneous exercise of discretion. As we have noted, in considering a request for unequal property division under Wis. Stat. § 767.255(3), the circuit court may summarily conclude that certain of the statutory factors are irrelevant. For example, subsection (3)(h), pertaining to consideration of the award of the family home to the party having physical placement of the children, will not be applicable to a childless divorcing couple. Similarly, subsection (3)(i), pertaining to consideration of the amount and duration of maintenance and family support awards, will not be applicable unless maintenance and family support are awarded.

¶ 27. Neither do we hold that every incomplete consideration of the statutory factors must be reversed as an erroneous exercise of discretion. A circuit court's failure to consider all the statutory factors might well

be harmless, particularly where the overlooked factors are only marginally relevant or not relevant at all. *See Parratt,* 146 Wis. 2d at 842; Wis. Stat. § 805.18(2).

¶ 28. As we have noted, the circuit court's unequal division of the most valuable marital asset in this case, MGL Fitness, reflects consideration of only one of the statutory factors, the contribution of each party to the marriage, pursuant to subsection (3)(d) of Wis. Stat. § 767.255. Moreover, the circuit court's analysis of even this sole statutory factor contradicts the explicit legislative purpose to "recognize the valuable contributions of both spouses during the marriage," as well as our case law establishing marriage as an equal partnership, in which the contributions of the spouse who is primarily engaged in child-rearing and homemaking are presumptively valued equally with those of the income-earning spouse. The spouse who raises the children and cares for the family home contributes, albeit indirectly, to the development and expansion of a family business, by carrying the child-rearing and homemaking responsibilities of the marriage partnership, enabling the other spouse to focus more intensively on the business.

¶ 29. Here, the circuit court devalued the contributions of the stay-at-home mother as against the entrepreneurship of the husband precisely because she did not directly contribute to the development and expansion of the family business. While it is not per se impermissible to assign greater or lesser weight to spousal contributions depending upon the facts in the case, it is an erroneous exercise of discretion to do so without considering the other applicable statutory factors and in a way that eviscerates the legislative pur-

pose to place child-rearing and homemaking on an equal footing with income-earning for purposes of property division in divorce.

¶ 30. It is true that the total property division in this case—54–46 percent in favor of Michael—did not substantially deviate from the statutory presumption of 50–50. The deviation, however, was arrived at without considering the required statutory factors, and was, therefore, an erroneous exercise of discretion. *See King*, 224 Wis. 2d at 251 ("A failure to apply or a misapplication of the statutory factors is an erroneous exercise of discretion."). We reverse and remand for reconsideration of the property division in accordance with the statutory standards.

¶ 31. We reject, however, Marcia's challenges to the child support and maintenance awards. The circuit court deviated from the percentage guidelines for child support pursuant to Wis. Stat. § 767.25(1m). However, the child support order exceeded Marcia's own child support request, which was itself a deviation from the percentage guidelines. We recognize that Marcia's child support request was accompanied by an unsuccessful request for a substantial maintenance award; it was, nevertheless, a concession that deviation from the percentage standard was appropriate. Having conceded that deviation from the percentage guidelines was appropriate, and having secured a child support award in excess of that which she requested, Marcia cannot now argue that deviation was unwarranted. *State v. Petty*, 201 Wis. 2d 337, 347, 548 N.W.2d 817 (1996) (a party who succeeds in arguing a position in a legal proceeding is judicially estopped from arguing a contrary position simply because his or her interests have changed).

¶ 32. Finally, we conclude that the circuit court's decision on the issue of maintenance reflects consideration of the relevant statutory factors under Wis. Stat. § 767.26, as well as the "twin goals" of maintenance: support and fairness. *King,* 224 Wis. 2d at 250; *LaRocque v. LaRocque,* 139 Wis. 2d 23, 33, 406 N.W.2d 736 (1987). The circuit court's decision on maintenance was legally and factually comprehensive and thoroughly reasoned, and its award of $615 per month for a period of eight years was not an erroneous exercise of discretion.

¶ 33. Marcia concedes that the circuit court followed this court's decision in *LaRocque* in arriving at an amount of maintenance necessary to meet the goal of sustaining a pre-divorce standard of living, but objects to the circuit court's subtraction from that amount a sum representing the funds she claimed were for purposes of savings. The circuit court explained that it subtracted this "savings" amount because Marcia had been awarded substantial liquid assets totaling $787,951 that would "insure her financial security into the future," that she would not be "burdened with any debt as she leaves this marriage," and that pursuant to the divorce judgment, she would have $14,022 per month in combined support payments and income-producing assets. This analysis reflects an appropriate exercise of discretion.

¶ 34. For the foregoing reasons, we reverse and remand this matter to the circuit court for reconsideration of the issue of division of property pursuant to Wis. Stat. § 767.255(3). The circuit court unequally divided the most valuable marital asset, MGL Fitness, without addressing all the applicable statutory factors that must be considered in order to overcome the presump-

tion of equal property division. In so doing, the circuit court applied an incorrect standard of law, and therefore erroneously exercised its discretion.

*By the Court.*—The decision of the court of appeals is reversed and the cause remanded to the circuit court for further proceedings consistent with this opinion.